David Levy, J.
This is an action by the plaintiff, Housing and Development Administration of the City of New York (hereinafter called HDA) under section D26-51.03 of the Administrative Code of the City of New York for the enforcement of civil penalties against the defendants, Bryant Westchester Realty Corp., the owner of the premises 2011 Morris Avenue, Bronx, New York; James Robertson, the registered *945 managing agent; Reuben Klein and Henry Chartier, officers of Bryant Westchester Realty Corp.; C & C Realty Company, the former owner of the premises; Jon Schulman, the former managing agent, and Carolyn Blumenson and Claire Sussman, also former owners of the premises.
The complaint alleges that all notices of violations were sent to Jon Schulman, the former managing agent, registered with HDA at the time of said notices.
The premises herein were conveyed by the former owners to the defendant, Bryant Westchester Realty Corp. on or about May 2, 1974 (recorded Sept. 3, 1974), although a managing agent, defendant, James Robertson, was not registered until July 22, 1974.
Basically, defendants move for summary judgment on the several claims for failure to remove violations and for the imposition of civil penalties on the ground that the statute requires notice to the owner or managing agent, and that the only notice of violations given was furnished to the former owner by notice to his managing agent. The question before the court is can a subsequent owner be held responsible for civil penalties under the Administrative Code when notice of violations was given to the former owner through his managing agent?
It is conceded that prior to the commencement of this action for imposition of penalties that no notice of violations was given by HDA to defendants (subsequent owners).
Subdivision (b) of section D26-51.01 of the Administrative Code provides that: "The department shall serve a notice of violation upon the owner, his agent or other person responsible for its correction.” The notice must also identify the condition constituting the violation, the provision of law applicable thereto, the department’s order number, the classification of the violation according to its degree of hazard, the time for certifying the correction of such violation, and the amount of possible penalty. It shall also advise that the department will, if requested, confer with the owner or his representative concerning the nature and extent of the work to be done to insure compliance, and the methods of financing such work. The notice shall also specify the date by which each violation shall be corrected.
Subdivision (f) of said section provides that when a violation has been corrected the owner or managing agent shall certify that the violation has been corrected. The violation is deemed *946 corrected within 70 days unless the HD A makes a reinspection and records that the violation has not been corrected.
The section provides for an expedited date when an owner files a certification together with a copy of a contract of sale and certifies that the sale is to take place within 100 days of the certification. In that event, the violation is deemed corrected within 30 days rather than 70 days unless a reinspection takes place and notation is made that the violation has not been corrected.
In addition, the Multiple Dwelling Law provides that the violations on a particular multiple dwelling are a public record and a search will be provided disclosing all violations to the date of the search, including the information required by the Administrative Code. (Multiple Dwelling Law, §§ 328, 327.)
It is clear to this court that since the Administrative Code provides for expediting a certificate of correction when there is a sale, failure to use this procedure leaves the violation of record. Secondly, the reason and purpose behind subdivision (b) of section D26-51.01 requiring notice of a violation to be served upon the owner, his agent or other person responsible for its correction is to alert existing owners that a violation has been placed upon their property and extend to them a certain amount of time to correct the violation. Obviously, it would be an insurmountable burden upon any owner to have to check the records of HDA daily to determine whether or not violations had been placed against his property.
On the other hand since the violations are of record (Multiple Dwelling Law, § 328), and since a potential purchaser may obtain a search of the records to determine any violations (Multiple Dwelling Law, § 327), it is also- clear that the reason for requiring notice to an existing owner does not apply to a purchaser. A reasonably prudent prospective purchaser would and should obviously have a search made to determine the extent and nature of the violations of record. Either he would then request that the violations be removed and the certification of correction expedited or agree to take the premises "as is” and agree to correct the violations. He would only be required to make a search at the time of purchase, unlike an owner who would have to search the record continuously.
Therefore, in the light of the provision for expediting the correction of a violation on a sale of a building, the fact that a *947 purchaser has constructive notice of any violations since they are of record, and, in light of the differences in policy vis-á-vis an owner and a purchaser, the court finds that notice to the former owner is sufficient to hold a purchaser for failure to correct violations. Any other decision would work an extreme hardship upon HDA which would be required to serve notices of violations every time a building is sold. Nothing in the Administrative Code requires such a procedure. The complaint states a cause of action against defendants and the motion for summary judgment by said defendants is denied.